1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLA FAYETTE HILL, | Case No.  1:14-cv-01813-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 17, 23, 24) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Lilla Fayette Hill ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from arthritis, degenerative disc disease, and obesity.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted and this action shall be remanded.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 10, 11.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 18, 2011.  (AR 71.)  Plaintiff's applications were initially denied on August 9, 2011, and denied upon reconsideration on October 19, 2011.  (AR 98-102, 106-110.)  Plaintiff requested and received a hearing before Administrative Law Judge Paul R. Armstrong ("the ALJ").  Plaintiff appeared for a hearing on May 2, 2013.  (AR 40-70.)  On July 15, 2013, the ALJ found that Plaintiff was not disabled.  (AR 19-29.)  The Appeals Council denied Plaintiff's request for review on September 18, 2014.  (AR 1-3.)

### A.    Hearing Testimony

Plaintiff testified during a video hearing on May 2, 2013.  (AR 42-61, 63-64.)  Plaintiff lives in a single story home.  (AR 50.)  She owns a car and is able to drive.  (AR 50.)  Plaintiff does her own grocery shopping and cleaning.  (AR 50.)  Plaintiff also gardens.  (AR 50.)  Plaintiff does not do anything for fun.  (AR 52.)

Plaintiff has an associate degree as an activity coordinator.  (AR 63-64.)  Plaintiff worked as a tax examiner for the Internal Revenue Service in 2009.  (AR 44-45.)  Plaintiff also worked as an activities director for a senior apartment complex and an in home care provider.  (AR 47-49.)  Plaintiff hurt her back in 2010 when carrying wood while providing in home care.  (AR 49.)  Plaintiff attended physical therapy.  (AR 54.)  Plaintiff did not follow the physical therapist's exercise plan because she hurt too much.  (AR 54.)

Plaintiff is able to lift ten to fifteen pounds.  (AR 52.)  She can walk ten minutes and then her shoulder, back and neck will be hurting.  (AR 53.)  Plaintiff is unable to lift her arms and it is difficult for her to wash her hair.  (AR 53.)

About every fifteen minutes, Plaintiff has shooting pain in her shoulders.  (AR 55.)  She is able to use her arms for about fifteen minutes before needing to take a ten to fifteen minute break.  (AR 55-56.)  Plaintiff can type for about ten minutes before needing to stop due to pain from her fingers, hands, shoulders and arms cramping.  (AR 57.)  Plaintiff is able to use her

hands for five to ten minutes.  (AR 58.)

Plaintiff uses Facebook and has about 100 Facebook friends.  (AR 57.)  Plaintiff is unable to text on her phone due to her fingers.  (AR 58.)  She has no feeling in her fingertips.  (AR 58.)  Plaintiff was told that she might have fibromyalgia.  (AR 58.)  She can wash dishes for fifteen minutes but standing for that long makes her back and hips hurt.  (AR 58.)  She had injections in her back for pain.  (AR 59.)  Plaintiff can lift a gallon of milk with difficulty because she does not have any strength in her wrists.  (AR 61.)

A vocational expert, Cheryl Chandler, also testified at the hearing.  (AR 61-65.)  The ALJ classified Plaintiff's past work experience as recreational leader, Dictionary of Occupational Titles ("DOT") 195.227-014, unskilled, SVP 6, light exertional level with occasional heavy; checker II, DOT 209.687-010, SVP 4, semi-skilled, sedentary; and home attendant, DOT 354.377-014, SVP 3, semi-skilled, medium exertional level.  (AR 62.)

The ALJ presented the VE with the hypothetical of an individual limited to light exertional level.  (AR 64.)  The VE opined that this individual would be able to perform Plaintiff's past relevant work as a checker, both as performed and per the DOT; and a recreational leader per the DOT but not as performed.  (AR 64.)

The ALJ presented a second hypothetical of an individual limited to sedentary.  (AR 64.)  The VE opined that this individual would be able to perform Plaintiff's past work as a checker.  (AR 64.)

The ALJ presented a third hypothetical of an individual who was limited to light work and could only do frequent handling and fingering.  (AR 64-65.)  The VE stated that those jobs are typically at the frequent level and not continuous.  (AR 65.)

The ALJ presented a fourth hypothetical of an individual who was limited to light work and occasionally could handle and finger on the left.  (AR 65.)  The VE opined that this individual could not perform Plaintiff's past work and there would be no jobs available that this individual could perform.  (AR 65.)  The VE began to provide information on the number of jobs in the national economy which allowed for occasional handling or fingering, but the ALJ stopped her because Plaintiff was 58 years old and would be limited to light so she would grid out.  (AR

65.)

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014;

- Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 30, 2010;

- Plaintiff had the following severe impairments: degenerative disc disease and obesity;

- Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- Plaintiff had the residual functional capacity to perform the full range of light work;

- Plaintiff was capable of performing her past relevant work as a recreational leader and checker II.   These activities did not require performance of work-related activities precluded by Plaintiff's residual functional capacity; and

- Plaintiff had not been under a disability as defined in the Social Security Act from January 30, 2010 through the date of the decision.

(AR 24-29.)

**C.      Medical Record**

Plaintiff was seen for a mid to lower back injury on January 26, 2010.  (AR 265-268.) Dr. Fernandez noted that Plaintiff was not in distress and had a normal gait.  (AR 266.)  She had mild tenderness along the right paraspinous area and mild tenderness and spasms along the right paralumbar area.  (AR 266.)  Plaintiff was able to bend forward with fingertips to knee level with pain.  (AR 266.)  She was diagnosed with a strain to her thoracic and lumbar spine.  (AR 266.) She was prescribed pain medication and cold and warm packs to be applied to the affected areas, was provided with exercise instructions, was limited to lift and carry up to 15 pounds with no repetitive bending, and could sit and stand as tolerated.  (AR 267.)  Plaintiff was referred to a

4

physical therapist.  (AR 267.)

Plaintiff saw Dr. Fernandez on January 28, 2010.  (AR 268-272.)  Plaintiff was in moderate pain with a normal gait.  (AR 270.)  There were no gross deformities to the thoracic spine.  (AR 270.)  Plaintiff had mild to moderate tenderness along the right paraspinous area and right paralumbar area and a very limited range of motion due to pain.  (AR 270.)  Plaintiff was to continue her pain medication and exercises.  (AR 270.)  She was limited to lift or carry no more than 10 pounds with no repetitive bending, and could sit or stand as tolerated.  (AR 270.)

Plaintiff returned on February 2, 2010.  (AR 271-275.)  Plaintiff reported that she was doing better and her pain was bearable.  (AR 274.)  Plaintiff was found to be in moderate pain with a normal gait.  (AR 274.)  She had mild tenderness along the right paraspinous area and mild tenderness and spasms along the right paralumbar area.  (AR 274.)  She could bend forward with fingertips to knees.  (AR 274.)  Lateral bending and extension were fifteen degrees with pain.  (AR 274.)  Motor was 5/5 bilaterally and reflexes were +2 bilateral, and Plaintiff was able to walk on her toes and heels with no difficulty.  (AR 274.)  Plaintiff's limitations were the same as the prior visit.  (AR 274.)

Dr. Fernandez saw Plaintiff again on February 10, 2010.  (AR 276-278.)  Plaintiff was found to be in moderate pain with normal gait.  (AR 277.)  Examination findings and limitations were the same as the prior visit.  (AR 277.)

On February 17, 2010, Plaintiff reported that she had seen the physical therapist and was doing her home exercises with an improvement in her pain.  (AR 280.)  She was doing enough better that she had not taken her medication because the pain was not bad.  (AR 280.)  Lateral bending was increased to twenty degrees, with all other findings and limitations the same as the prior visit.  (AR 280.)

On March 3, 2010, Plaintiff was seen by Dr. McNarghton.  (AR 387.)  Dr. McNarghton found tenderness of +4 at L5-S1 on the right with no spasms noted.  (AR 387.)  Plaintiff was seen again on March 5, 2010 and reported that her back had improved slightly but her hip was unchanged.  (AR 387.)  Dr. McNaughton's first report of occupational injury stated that Plaintiff was released for modified work status on March 17, 2010 and she was expected to be able to

1   return to regular work on March 24, 2010.  (AR 394.)

2   On March 8, 2010, Plaintiff reported that she felt good after the last appointment, but her

3   pain returned a few hours later.  (AR 386.)   On March 10, 2010, Plaintiff reported she was

4   unable to sit or stand form more than an hour, but she was better overall.  (AR 386.)  On March

5   12, 2010, Plaintiff reported that her lower back had more pain than the prior visit although she

6   had been okay the day prior.  (AR 386.)  On March 15, 2010, Plaintiff reported that she was

7   doing much better and was having no pain.  (AR 385.)  On March 17, 2010, Plaintiff reported her

8   back was a little sore.  (AR 385.)  She had severe pain the day prior, but was doing better

9   reporting an overall forty percent improvement.   (AR 385.)   On March 18, 2010, Dr.

10  McNaughton provided a progress report stating that Plaintiff could return to modified work on

11  March 17, 2010, but could do no bending or lifting over 20 pounds, no pushing or pulling and no

12  prolonged sitting or standing.  (AR 395.)

13  On March 19, 2010, Plaintiff reported that her back was hurting because she did too

14  much walking the day before.  (AR 385.)  On March 22, 2010, Plaintiff reported feeling some

15  pain in the morning, but it was better than it had been.  (AR 385.)  On March 24, 2010, Plaintiff

16  reported some hip pain, but her lower back was feeling good.  (AR 384.)  On March 29, 2010,

17  Plaintiff reported hip pain and not severe back pain.  (AR 384.)

18  On April 2, 2010, Plaintiff reported that her back felt pretty good, but her hip was still

19  hurting.  (AR 384.)  Overall her back had improved by fifty percent and her hip pain had

20  improved by twenty percent.  (AR 384.)  On April 9, 2010, Dr. McNaughton stated that Plaintiff

21  was released to return to work on April 2, 2010, with no prolonged standing, walking, or bending

22  and no heavy lifting.  (AR 397.)

23  Plaintiff was seen again by Dr. McNaughton on May 14, 2010, and reported that her back

24  pain was returning.  (AR 383.)  On May 19, 2010, Plaintiff reported that her back had felt really

25  good for the last few days, but she had stood a lot the previous day and was feeling more pain.

26  (AR 383.)

27  Plaintiff was seen by Dr. Clark on June 1, 2010.  (AR 358-370.)  Dr. Clark noted that

28  Plaintiff appeared to be in pain during the consultation and examination.  (AR 365.)  She got up

1   and walked around on several occasions and moved in her chair frequently.  (AR 365.)  Dr. Clark

2   found significant point tenderness over the L5-SI spinous processes of a +3/5 intensity with a

3   jump sign, +4/5 tenderness over the right sacroiliac articulation superior joint, and +3/5

4   tenderness over the L4 spinous process.  (AR 366.)  There were no muscle spasms felt on

5   palpation of the right lumbar spine.  (AR 366.)  There was significant tenderness over the sciatic

6   notch on the right greater than the left.  (AR 366.)  Extension and right lateral bending were

7   reduced to fifty percent of normal with complaint of pain in the right lumbosacral spine.  (AR

8   366.)  Left lateral bending was full with stacking noted at the L4-5 level with complaint of

9   pulling pain in the right lumbosacral spine.  (AR 366.)  Right and left rotation were full with

10   complaints of pain at the end ranges in the right lumbosacral spine.  (AR 366.)

11       Plaintiff was unable to stand on her right or left foot due to loss of balance.  (AR 366.)

12   She was able to walk on her heels and toes without difficulty.  (AR 366.)  Squatting was difficult

13   and she only went three quarters of the way down.  (AR 366.)  Plaintiff walked her hands up her

14   legs to return to the erect position.  (AR 366.)  In the sitting position, Valsalva maneuver was

15   positive for lower back pain.  (AR 366.)  Patellar reflexes were reduced at +1 bilaterally with

16   reinforcement.  (AR 366.)  Achilles reflexes were absent bilaterally.  (AR 366.)  Fabere Patrick's

17   maneuver increased pain in the right hip and lower back.  (AR 367.)  On the left, tight adductor

18   muscles were noted with increased complaints in the hip.  (AR 367.)  Straight leg raising on the

19   right was thirty degrees with increased complaints of lower back pain and pain into the posterior

20   leg stopping at the knee.  (AR 367.)  On the left Plaintiff was able to raise the leg to sixty degrees

21   with no pain.  (AR 367.)  Milgram's test was positive for lower back pain, however Plaintiff was

22   able to raise her feet six inches off the table.  (AR 367.)  Cervical distraction also caused pain in

23   the lower back.  (AR 367.)

24       Dr. Clark opined that Plaintiff had sustained an injury to her lower back and posterior

25   right leg and continues to complain of pain that is greater than moderate.  (AR 368.)  Dr. Clark

26   recommended an MRI of the lumber spine be performed and she be referred to a physiatrist.

27   (AR 368.)

28       On June 3, 2010, Plaintiff saw Dr. McNaughton and reported lower back pain.  (AR 383.)

1    Plaintiff had an MRI of the lumbar spine on July 30, 2010.  (AR 338, 388.)  The vertebral

2    bodies and posterior elements demonstrated satisfactory alignment.  (AR 339, 389.)  The neural

3    foramina all appeared patent with no evidence of nerve root compression.  (AR 339, 389.)  There

4    were mild multilevel degenerative changes.  (AR 339.)

5    Plaintiff had a consultation with Dr. Salazar for pain management on September 8, 2010.

6    (AR 325-335.)  Plaintiff complained of moderate pain.  (AR 326.)  Dr. Salazar found non-tender

7    sacroiliac joints and tender paravertebral facet joints bilaterally.  (AR 327.)  Range of motion

8    was normal with pain on extension to the bilateral lumbosacral elements.  (AR 327.)  Muscle

9    strength was 5 and symmetrical bilaterally.  (AR 327.)  Deep tendon reflexes were 1 plus equal

10   and symmetrical bilaterally.  (AR 328.)  Orthopaedic testing and coordination were performed

11   without incident.  (AR 328.)  Neurological and psychiatric examination were within normal

12   limits.  (AR 328.)  Dr. Salazar found mild facet arthropathy at L2-3, L3-4 and L4-5, with no

13   abnormalities at L5-S1.  (AR 328-329.)  Plaintiff was diagnosed with lumbar facet syndrome.

14   (AR 329.)  Dr. Salazar gave Plaintiff a pain-related impairment score of 48 at the visit placing

15   her in a moderately severe impairment category.  (AR 329.)  Dr. Salazar recommended staged

16   bilateral therapeutic facet injections.  (AR 334.)

17   Dr. Salazar completed a progress report on November 16, 2010.  (AR 310-318.)  Plaintiff

18   received injections on October 29 and November 5, 2010.  (AR 311.)  She reported that she was

19   doing a little better and that she had moderate pain.  (AR 311.)  Dr. Salazar found significantly

20   tender sacroiliac joints bilaterally.  (AR 312.)  Range of motion was normal.  (AR 312.)  She had

21   positive seated flexion, standing flexion, and extension tests.  (AR 312.)  Neurologic and

22   psychiatric examination was within normal limits.  (AR 313.)  Plaintiff was diagnosed with

23   lumbar facet syndrome and sacroiliac ligament sprain/strain.  (AR 313.)

24   On January 19, 2011, Plaintiff saw Dr. Salazar for a follow up after receiving injections.

25   (AR 301.)  Plaintiff reported that the pain had resolved dramatically in the sacroiliac joints, but

26   the pain was returning in the upper back.  (AR 301.)  Dr. Salazar completed progress reports on

27   March 14, 2011, and April 14, 2011.  (AR 282-287, 288-293.)  Plaintiff had received injections

28   on February 25, 2011.  (AR 289.)  On March 14, 2011, Dr. Salazar noted that Plaintiff had

1  responded quite well to the injections and her low back component has resolved dramatically.

2  (AR 291.)  On April 14, 2011, Plaintiff reported that she had slight to moderate pain.  (AR 283.)

3  At all visits, Dr. Salazar found a tender left sacroiliac joint.  (AR 284, 290, 301.)  Flexion was

4  normal, with a notation of pain on extension to the bilateral lumbar facets only in the January 19,

5  2011 report.  (AR 284, 290, 302.)  Neurological and psychiatric findings were within normal

6  limits.  (AR 284, 290, 302-303.)

7       On May 17, 2011, Dr. Clark completed a qualified medical re-evaluation report.  (AR

8  340-348.)  Dr. Clark opined that Plaintiff had not reached a maximum of medical improvement

9  and was in need of further treatment.  (AR 341.)  Plaintiff reported that her lower back pain had

10  not changed over the past year, but that her posterior right leg pain had resolved since she

11  received injections from Dr. Salazar.  (AR 342.)  Plaintiff did have occasional pain in her left hip

12  when she put pressure on the leg to step into her vehicle which is a van.  (AR 342.)  Dr. Clark's

13  findings had not changed since his initial report, except that Plaintiff's patellar reflexes were

14  absent bilaterally, even with reinforcement.  (AR 345.)  An x-ray of Plaintiff's pelvis was

15  performed.  (AR 345.)  Dr. Clark diagnosed Plaintiff with lumbar facet syndrome bilaterally,

16  sacroiliac segmental dysfunction with osteoarthritis bilaterally and mild acetabular osteoarthritis

17  bilaterally with preservation of the acetabular joints.  (AR 345.)

18       On July 22, 2011, Plaintiff reported a fifty to sixty percent improvement with treatment.

19  (AR 573.)  Plaintiff reported slight to moderate pain.  (AR 573.)  Dr. Salazar found tender

20  bilateral paravertebral elements.  (AR 574.)  Flexion showed fingertips to 24 inches from the

21  floor with pain on extension to the lowest facet regions.  (AR 574.)  Range of motion was

22  normal.  (AR 574.)  Neurological and psychiatric examination was within normal limits.  (AR

23  574.)  Dr. Salazar stated that Plaintiff had discomfort at the office visit and was tender over the

24  facet joints of the lumbosacral spine.  (AR 577.)  Her pain related impairment score was 36

25  which placed her in a moderate impairment category.  (AR 577.)

26       On August 8, 2011, Dr. Ocrant performed a case analysis and physical residual functional

27  capacity assessment.  (AR 371-379.)  Dr. Ocrant opined that Plaintiff was able to occasionally

28  lift 20 pounds and frequently lift 10 pounds; could stand or walk about 6 hours in an 8 hour

workday; could sit 6 hours in an 8 hour workday; was unlimited in her ability to push and pull; could frequently balance, kneel, and crawl, and occasionally, climb ramps, stairs, ladders, ropes or scaffolds, stoop, or crouch.   (AR 372-373.)   Plaintiff had no manipulative, visual, communicative or environmental limitations.  (AR 373-374.)  Dr. Ocrant noted that there was modified work allowed in many examinations without any explanation of limitations.  (AR 375.) Plaintiff was allowed a modified work schedule when she was initially seen with a lift and carry limitation of fifteen pounds.  (AR 375.)  These were taken into consideration and given some weight, but there did not appear to be twelve months of less than light work restriction.  (AR 375.) Dr. Ocrant found that Plaintiff had been able to do light work all along.  (AR 379.)

On August 10, 2011, Plaintiff presented to Dr. Salazar stating she was in tremendous discomfort and wanted analgesic measures provided again.  (AR 558.)  Plaintiff reported moderate pain.  (AR 558.)  Dr. Salazar found tender bilateral paravertebral elements.  (AR 558.) Flexion showed fingertips to 24 inches from the floor.  (AR 558.)  Range of motion was normal with pain on extension to the lowest facet regions.  (AR 558.)  Neurological and psychiatric examination was within normal limits.  (AR 558.)  Dr. Salazar opined that he was concerned about rescue pain and the potential for causing an addictive issue long-term.  (AR 558.)  Dr. Salazar prescribed a Butrans patch to be changed every seven days.  (AR 558.)

On August 26, 2011, and September 2, 2011, Dr. Salazar performed radiofrequency lesioning right to the L3-L4 and L4-L5 facets.  (AR 554-555; 567-569.)

On September 19, 2011, Plaintiff presented in the office in good spirits and reported that she had greater than fifty percent improvement from her treatment with no side effects from her medication or rescue pain.  (AR 541.)  Plaintiff reported slight to moderate pain.  (AR 541.)  Dr. Salazar found slight tenderness in the lumbosacral paravertebral elements.  (AR 542.)  Flexion showed fingertips to 24 inches from the floor.  (AR 542.)  Range of motion was normal.  (AR 542.)  Neurological and psychiatric examination was within normal limits.  (AR 542-543.)  Dr. Salazar opined that Plaintiff was greater than fifty percent improved with treatment.  (AR 543.) Her pain related impairment score was 51 which placed her in a moderately severe impairment category.  (AR 543.)

1    On October 27, 2011, Dr. Kiger reviewed the file on reconsideration and found that there

2    had been no new worsening of Plaintiff's condition and no new treatment.  (AR 380.)  Dr. Kiger

3    recommended affirming the initial decision as written.  (AR 380.)

4    On November 18, 2011, Plaintiff reported in good spirits and not complaining of any side

5    effects or rescue pain.  (AR 529.)  Plaintiff complained of slight to moderate pain.  (AR 529.)

6    Dr. Salazar found slight tenderness in the lumbosacral paravertebral elements.  (AR 529.)

7    Flexion showed fingertips to 24 inches from the floor.  (AR 530.)  Range of motion was normal.

8    (AR 529.)  Neurological and psychiatric examination was within normal limits.  (AR 530.)  Her

9    pain related impairment score was 50 which placed her in a moderately severe impairment

10   category.  (AR 531.)

11   On December 15, 2011, Plaintiff reported that she was very pleased with her response to

12   the medication.  (AR 515.)  Plaintiff reported her pain as slight.  (AR 515.)  Dr. Salazar found

13   minimally tender lumbosacral paravertebral elements.  (AR 515.)  Flexion showed fingertips to

14   24 inches from the floor.  (AR 516.)  Range of motion was normal.  (AR 516.)  Neurological and

15   psychiatric examination was within normal limits.  (AR 516.)  Her pain related impairment score

16   was 50 which placed her in a moderately severe impairment category.  (AR 517.)

17   Plaintiff saw Dr. McNaughton on January 30, 2012, and reported constant slightly

18   improved mild to moderate right side back pain with pain radiating across the lower back.  (AR

19   383.)  The pain was aggravated by bending over, standing more than one half hour, lifting,

20   reaching, sweeping, mopping, picking up firewood, and walking over two hundred to three

21   hundred yards.  (AR 382.)

22   On February 13, 2012, Plaintiff reported that she was reasonably pleased with her

23   response to her medication, and did not complaint of any rescue pain.  (AR 501.)  Plaintiff

24   complained of slight to moderate pain.  (AR 501.)  Dr. Salazar found minimally tender

25   lumbosacral paravertebral elements.  (AR 501.)  Flexion showed fingertips to 24 inches from the

26   floor.  (AR 501.)  Range of motion was normal.  (AR 501.)  Neurological and psychiatric

27   examination was within normal limits.  (AR 501.)  Dr. Salazar opined that Plaintiff was

28   continuing to respond quite well from the radio frequency lesioning of the lumbar facets

1  previously performed.  (AR 503.)  Her pain related impairment score was 45 which placed her in

2  a moderately severe impairment category.  (AR 503.)

3      On March 12, 2012, Plaintiff reported that she was reasonably pleased with her response

4  to her medication, and did not complain of any rescue pain.  (AR 495.)  Plaintiff complained of

5  slight to moderate pain.  (AR 495.)  Dr. Salazar found minimally tender lumbosacral

6  paravertebral elements.  (AR 496.)  Flexion showed fingertips to 24 inches from the floor.  (AR

7  496.)  Range of motion was normal.  (AR 496.)  Neurological and psychiatric examination was

8  within normal limits.  (AR 496.)  Her pain related impairment score was 48 which placed her in a

9  moderately severe impairment category.  (AR 496.)

10      On April 16, 2012, Plaintiff reported that she was pleased with her response to her

11  medication, but complained of rescue pain.  (AR 477.)  Plaintiff complained of slight to

12  moderate pain.  (AR 477.)  Dr. Salazar findings and her pain related impairment score were the

13  same as the prior visit.  (AR 477.)

14      On May 14, 2012, Plaintiff reported rescue pain with her medication.  (AR 463.)

15  Plaintiff complained of slight to moderate pain.  (AR 463.)  Dr. Salazar's findings were the same

16  as the prior visit.  (AR 463.)

17      On June 27, 2012, Plaintiff reported that she was reasonably pleased with her response to

18  her medication, but complained of rescue pain.  (AR 449.)  Plaintiff complained of slight to

19  moderate pain.  (AR 449.)  Dr. Salazar findings were the same as the prior visit.  (AR 450.)  Dr.

20  Salazar opined that Plaintiff was continuing to respond reasonably well to her medication with

21  some residual rescue pain.  (AR 442.)  Her pain related impairment score was 55 which placed

22  her in a moderately severe impairment category.  (AR 451.)

23      On July 25, 2012, Plaintiff again reported that she was reasonably pleased with her

24  response to her medication, but complained of rescue pain.  (AR 440.)  Plaintiff complained of

25  slight to moderate pain.  (AR 440.)  Dr. Salazar's findings were the same as the prior visit.  (AR

26  441.)  Dr. Salazar opined that Plaintiff was continuing to respond reasonably well to her

27  medication with some residual rescue pain.  (AR 442.)  Her pain related impairment score was

28  49 which placed her in a moderately severe impairment category.  (AR 442.)

1       On August 22, 2012, Plaintiff reported slight to moderate pain.  (AR 433.)  There was

2   some rescue pain of concern.  (AR 433.)  Dr. Salazar's findings were the same as the prior visit.

3   (AR 434.)  Plaintiff's pain-related impairment score was 53 indicating moderately severe

4   impairment.  (AR 435.)

5       On August 30, 2012, Plaintiff reported slight to moderate pain.  (AR 423.)  Dr. Salazar's

6   findings were the same as the prior visit.  (AR 424.)  Dr. Salazar prescribed a cane because

7   Plaintiff was having some difficulty ambulating.  (AR 425.)  He also prescribed a lumbar brace.

8   (AR 427.)

9       On September 19, 2012, Plaintiff reported slight to moderate pain.  (AR 415.)  Plaintiff

10  reported discontinuing her medication.  (AR 416.)  Dr. Salazar's findings were the same as the

11  prior visit.  (AR 416.)  Plaintiff decided that she would take no more opioid medication and Dr.

12  Salazar agreed that was reasonable.  (AR 417.)  Dr. Salazar placed Plaintiff's total pain-related

13  impairment score at 52 which put her in a moderately severe impairment category.  (AR 417.)

14      On October 17, 2012, Plaintiff reported slight to moderate pain.  (AR 409-410.)  Dr.

15  Salazar's finding were the same as the prior visit.  (AR 410.)

16      On October 25, 2012, Dr. Salazar performed another injection.  (AR 400-402.)  On

17  October 29, 2012, Dr. Salazar reported that Plaintiff was reporting slight to moderate pain.  (AR

18  404.)  Plaintiff was treated with spinal cord stimulation electrodes, but the treatment failed.  (AR

19  405-406.)  Plaintiff's neurological and psychiatric examination was within normal limits.  (AR

20  405.)

21      On November 20, 2012, Plaintiff was seen by Dr. Smith with lower back pain.  (AR 582.)

22  On follow up on December 7, 2012, Plaintiff had pain in her right shoulder.  (AR 581.)

23      On January 7, 2013, a functional capacity evaluation summary report was provided by

24  Lindsey Pimental.  (AR 583-589.)  Ms. Pimental's testing showed that Plaintiff was able to stand

25  doing activity for one hour and approximately thirty minutes at one time before needing to be

26  seated.  (AR 585.)  Plaintiff could walk for a total of ten minutes, but did not walk for more than

27  one minute at a time before resting.  (AR 585.)  Plaintiff was able to sit for two hours and fifteen

28  minutes and for forty five minutes at one time without signs of discomfort in her lower back.

1   (AR 585.)

2       Plaintiff was able to lift up to ten pounds, but could not lift anything overhead.  (AR 585.)

3   Plaintiff could carry ten pounds.  (AR 585.)  Plaintiff could push 62 pounds of force with both

4   arms as a static push and could pull 39 pounds of force using both hands as a static pull.  (AR

5   585.)  Plaintiff could climb twenty two steps, and could perform some low level balancing.  (AR

6   586.)  Plaintiff could stoop and retrieve an object from the floor but needed assistance to rise.

7   (AR 586.)  Plaintiff was not able to crouch, crawl, and could only twist with pain.  (AR 586.)

8       Plaintiff could reach forward without difficulty, and was able to do light handling of

9   objects.  (AR 586.)  Plaintiff's grip strength peaked bilaterally at forty pounds which is below

10  average. (AR 586.)  Plaintiff was able to perform fingering activities and could perform above

11  the shoulder work for just less than five and one half minutes.  (AR 586.)

12      Ms. Pimental found that Plaintiff complained of inappropriate pain during placebo

13  testing.  (AR 596.)   In the pain scales, Ms. Pimental found that subjective ratings of pain

14  matched poorly with distraction based clinical observations and repetitive movements matched

15  poorly with clinical observations.  (AR 596.)  The Spinal Function test indicated a marginally

16  unreliable profile.  (AR 598.)  Subsequent testing indicated that Plaintiff's subjective reports

17  matched poorly with distraction-based objective findings.  (AR 598.)  Ms. Pimental noted that

18  Plaintiff showed no signs of physical discomfort during the testing.  (AR 598.)

19      Ultimately, Ms. Pimental stated that the overall test findings suggest the presence of low

20  levels of physical effort on Plaintiff's behalf.  (AR 588.)  Ms. Pimental found that Plaintiff can

21  do more physically at times than was demonstrated during the testing.  (AR 588.)  Further, Ms.

22  Pimental found that "considerable question should be drawn to the reliability and accuracy of

23  [Plaintiff's] reports of pain and disability."  (AR 588.)

24                                    **III.**

25                             **LEGAL STANDARD**

26      To qualify for disability insurance benefits under the Social Security Act, the claimant

27  must show that she is unable "to engage in any substantial gainful activity by reason of any

28  medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

1    "[A] reviewing court must consider the entire record as a whole and may not affirm

2    simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

3    Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

4    this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

5    for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

6    susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

7    upheld.").

8                                    **IV.**

9                       **DISCUSSION AND ANALYSIS**

10       Plaintiff raises two issues in this appeal. Plaintiff contends that the ALJ erred by failing

11   to provide legally sufficient reasons to reject the opinion of Dr. McNaughton and by relying on

12   the opinion of the non-examining physician in the residual functional capacity determination.

13       **A.       Dr. Ocrant's Opinion**

14       Initially, the Court shall consider Plaintiff's contention that the ALJ erred in relying on

15   the opinion of Dr. Ocrant who was a non-examining physician. Plaintiff argues that the newer

16   medical evidence shows a worsening in her condition and it was error for the ALJ to rely on the

17   opinion of the non-examining physicians in determining Plaintiff's residual functional capacity.

18   Defendant responds that contrary to Plaintiff's contention, the subsequent medical records do not

19   demonstrate a worsening of her condition, but show that she had some improvement of her

20   symptoms. Plaintiff replies that the medical record demonstrates an ongoing failure of the

21   treatment provided to provide pain relief and a worsening of pain despite Plaintiff's compliance

22   with treatment.

23       The weight to be given to medical opinions depends upon whether the opinion is

24   proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d

25   821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater

26   weight than that of a nontreating physician because "he is employed to cure and has a greater

27   opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d

28   1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is

1  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

2  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

3  1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

4          The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

5  specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

6  may constitute substantial evidence when it is consistent with other independent evidence in the

7  record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept

8  the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.

9  Thomas, 278 F.3d at 957.

10         The ALJ set forth a summary of Plaintiff's medical record and afforded significant

11  weight to the conclusions of the agency physicians that Plaintiff was able to engage in light

12  posturals because they were consistent with the objective medical evidence.  (AR 27.)  At the

13  time that Dr. Ocrant issued his report, Plaintiff was reporting moderate to no pain and was

14  responding well to her medication.  (AR 291, 515, 573.)  Even by Plaintiff's own reports she had

15  dramatically improved by fifty to sixty percent and her pain related impairment score had

16  improved from 48 to 36.  (AR 291, 301, 329, 573-577.)

17         Defendant argues that the record shows that Plaintiff's condition had actually improved

18  subsequent to Dr. Ocrant's report.  However, almost contemporaneously with Dr. Ocrant issuing

19  his report, Plaintiff saw Dr. Salazar complaining that she was in tremendous discomfort and

20  wanted him to start analgesic measures again.  (AR 588.)  While Dr. Kiger found that there had

21  been no worsening of Plaintiff's treatment and no new treatment, Plaintiff had received

22  radiofrequency lesioning and a new medication.  (AR 558, 554-555, 567-569.)  Further, the

23  subsequent medical record shows that Plaintiffs' pain related impairment score had dropped,

24  from 36 to between 48 and 53, into the moderately severe impairment category.  The ALJ did not

25  address any of the subsequent medical records in his opinion.

26         For these reasons, the Court finds that this action must be remanded for the ALJ to

27  consider and address the medical record subsequent to Dr. Ocrant's report.

28  / / /

1          **B.      Dr. McNaughton's Opinion**

2          Plaintiff also contends that the ALJ erred by failing to provide reasons germane to Dr.

3    McNaughton to reject his testimony.  Defendant does not present any argument that the ALJ did

4    not err in rejecting Dr. McNaughton's testimony.

5          The ALJ gave no weight to Dr. McNaughton's opinion that Plaintiff could do no bending

6    or lifting over 20 pounds and postural limitations because he is a chiropractor and is not an

7    acceptable medical source.  (AR 28.)  A chiropractor is defined as an "other source" in the Social

8    Security regulations.  20 C.F.R. § 404.1513(d).  In order to discount the testimony of other

9    sources, the ALJ needs to provide reasons that are germane to the witness.  Molina v. Astrue,

10   674 F.3d 1104, 1111 (9th Cir. 2012).

11         Here, the ALJ did not provide any reason other than that Dr. McNaughton was not an

12   acceptable medical source for rejecting his opinion.  Although the ALJ may give more weight to

13   the opinion of an "acceptable medical source" over an "other source," see 20 CFR § 416.927;

14   Casner v. Colvin, 958 F. Supp. 2d 1087, 1092 (C.D. Cal. 2013), "the ALJ may not completely

15   disregard an opinion from an 'other source' merely because it is not an 'acceptable medical

16   source.' "  Sanchez v. Comm'r of Soc. Sec., No. 2:13-CV-0786-KJN, 2014 WL 4678282, at *3

17   (E.D. Cal. Sept. 19, 2014) (citations omitted).  The ALJ erred by failing to provide germane

18   reasons to disregard the testimony of Dr. McNaughton.

19         Defendant argues that any error was harmless as Dr. McNaughton's limitations do not

20   conflict with the residual functional capacity found by the ALJ.  Plaintiff contends that the error

21   was harmless because the regulations provide that to be capable of performing light work you

22   must have the ability to do a good deal of walking, standing, pushing and pulling.

23         The harmless error rule applies to social security cases.  Marsh v. Colvin, 792 F.3d 1170,

24   1172 (9th Cir. 2015); McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).  The reviewing court

25   can determine from the "circumstances of the case whether further administrative review is

26   necessary to determine whether there was prejudice from the error."  McLeod, 640 F.3d at 888.

27   Mere probability of error is not enough.  Id.  "But where the circumstances of the case show a

28   substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether

1   re-consideration is necessary.  By contrast, where harmlessness is clear and not a borderline

2   question, remand for reconsideration is not appropriate."  Id. (internal punctuation and citations

3   omitted).  "[E]rrors in social security cases are harmless if they are 'inconsequential to the

4   ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error

5   harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

6   testimony, could have reached a different disability determination.' "  Id. at 1173 (quoting Stout,

7   454 F.3d at 1055–56).

8         Defendant argues that Dr. McNaughton's opinion is consistent with Plaintiff's ability to

9   do sedentary work.  While it is true that the VE testified that Plaintiff could perform her prior

10  work as a checker if she was limited to sedentary work, the ALJ found that Plaintiff was able to

11  perform light work.  Further, the question of whether the medical record supports a finding that

12  Plaintiff is able to perform sedentary work is for the ALJ to determine, not this Court.

13        The ALJ erred by rejecting Dr. McNaughton's opinion without providing reasons that are

14  germane to the witness and the error was not harmless.

15        **C.    Remand is Appropriate**

16        Plaintiff seeks remand for further development of the record or alternately seeks a

17  remand for benefits.  Defendant argues that the record needs no further development and the

18  evidentiary record supports that ALJ's findings.

19        The Court has the discretion to remand a case for either an award of benefits or for

20  additional evidence.  Smolen, 80 F.3d at 1292.  The remand should be for "an award of benefits

21  where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2)

22  there are no outstanding issues that must be resolved before a determination of disability can be

23  made, and (3) it is clear from the record that the ALJ would be required to find the claimant

24  disabled were such evidence credited."  Id.

25        Further, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in

26  fact, disabled, no matter how egregious the ALJ's errors may be."  Strauss v. Comm'r of the Soc.

27  Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).  The Ninth Circuit has recently clarified that

28  "we may remand on an open record for further proceedings 'when the record as a whole creates

1  serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

2  Security Act.' "  Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison v.

3  Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)).

4        Here, the record as a whole creates a serious doubt as to whether Plaintiff is disabled.

5  While the ALJ failed to address the subsequent treatment provided by Dr. Salazar, the suggestion

6  that Plaintiff's condition was actually worsening is based on Plaintiff's subjective complaints as

7  reported to the doctor.  Specifically, the pain-related impairment score is based on Plaintiff's

8  reported activities of daily living.  (AR 490, 497; see also 467 (Plaintiff did not fill out a total

9  pain related impairment questionnaire in today's office visit).)  The ALJ may reject a physician's

10  opinion that is premised on a claimant's subjective complaints that have been properly

11  discounted.  Fair v. Bowen, 885 F.2d 597, 605 (1989).  While the medical record does not

12  contain the forms filed out by Plaintiff, the record shows that Plaintiff lives on a small farm in

13  the mountains and takes care of approximately one acre on which she raises chickens and sheep.

14  (AR 360, 586.)  She feeds the sheep two times per day.  (AR 360.)  Caring for the farm includes

15  digging holes and lifting wood up to ten pounds.  (AR 360-361.)  Plaintiff raises tomatoes on her

16  farm.  (AR 50.)  She does her own cleaning.  (AR 50.)

17        The ALJ provided valid reasons to find that Plaintiff was not disabled.  He considered

18  that the work restrictions that have been imposed by Plaintiff's treating physicians are

19  consistently at the light exertional level.  (AR 27.)  Additionally, the ALJ considered Ms.

20  Pimentel's report which found that Plaintiff can do more than she demonstrated during testing

21  and that her subjective ratings of pain matched poorly with distraction based clinical

22  observations.  (AR 27.)  Ms. Pimental opined that the overall test findings in combination with

23  the clinical observations suggested that considerable question should be drawn as to the

24  reliability and accuracy of Plaintiff's reports of pain and disability.  (AR 588.)  The ALJ has

25  found that Plaintiff's complaints are only partially credible and Plaintiff does not challenge this

26  finding.  (AR 27.)

27        Finally, the Court notes that the subsequent medical record shows that Plaintiff decided

28  that she would take no more opioid medication and Dr. Salazar agreed that was reasonable.  (AR

417.)  This could indicate that Plaintiff's pain is not severe as she contends.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may make inference that pain is not as severe as alleged where claimant discontinues effective treatment).

Plaintiff seeks an order requiring she be sent for further examination or for the ALJ to contact her treating physician to receive physical limitations.  The Court declines to do so.  While there are still outstanding issues as to Plaintiff's residual functional capacity and the jobs that she might be able to perform, upon remand it is for the ALJ to determine what steps are necessary to fully develop the record.

**V.**

**CONCLUSION AND ORDER**

Accordingly, for the reasons stated, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED.   This action is remanded for further proceedings consistent with this order.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 4, 2016**

UNITED STATES MAGISTRATE JUDGE